# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| JOSE CRUZ, et al.,<br><br>              Plaintiffs,<br>    v.<br>AURORA LOAN SERVICES LLC,<br><br>              Defendant.<br>_____/ | No. C 15-00585 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AURORA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>[Re: ECF No. 9] |

## INTRODUCTION

In this mortgage- and foreclosure-related action, Defendant Aurora Loan Services LLC ("Aurora") moves to dismiss the complaint brought by Plaintiffs Jose Cruz and Blanca Cruz. (*See* Complaint, ECF No. 1 at 7-21; Motion, ECF No. 9.[1]) Both sides have consented to the undersigned's jurisdiction. (Aurora's Consent, ECF No. 7; Plaintiffs' Consent, ECF No. 14.) Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the May 7, 2015 hearing. (5/1/2015 Clerk's Notice, ECF No. 26.) Upon consideration of the papers submitted and the applicable legal authority, and for the reasons stated below, the court grants in part and denies in part Aurora's motion. Plaintiffs may file a first amended complaint by May 26, 2015.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

No. 3:15-cv-00585 LB
ORDER

**STATEMENT**

**I. PLAINTIFFS' ALLEGATIONS**

In July 2006, Plaintiffs obtained a loan for $425,600 from SCME Mortgage Bankers, Inc. and purchased property located at 54 Puffin Circle, Oakley, California 94561 (the "Property"). (Complaint ¶¶ 2, 8, 10; Request for Judicial Notice ("RJN"), Ex. 1, ECF No. 10-1.[2]) That loan was secured by a deed of trust recorded against the Property. (RJN, Ex. 1, ECF No. 10-1.)

In February 2010, after defaulting on their loan, Plaintiffs' loan payments increased from $1,532 per month to $3,353 per month. (Complaint ¶ 11; RJN, Ex. 2, ECF No. 10-2.) After making the

---

[2] Aurora asks the court to take judicial notice of the following eight documents: (1) a deed of trust dated July 24, 2006 which was recorded in the Official Records of Contra Costa County on July 31, 2006 as Document Number 2006-0240664-00; (2) a notice of default dated October 6, 2009 which was recorded in the Official Records of Contra Costa County on October 6, 2009 as Document Number 2009-0236198-00; (3) a notice of substitution of trustee dated October 6, 2009 which was recorded in the Official Records of Contra Costa County on November 17, 2009 as Document Number 2009-0272551-00; (4) a notice of trustee's sale dated January 7, 2010 which was recorded in the Official Records of Contra Costa County on January 8, 2010 as Document Number 2010-0003724-00; (5) a trustee's deed upon sale dated September 2, 2011 which was recorded in the Official Records of Contra Costa County on September 8, 2011 as Document Number 2011-0184313-00; (6) a grant deed dated April 25, 2012 which was recorded in the Official Records of Contra Costa County on June 1, 2012 as Document Number 2012-0130206-00; (7) a grant deed dated June 20, 2014 which was recorded in the Official Records of Contra Costa County on June 24, 2014 as Document Number 2014-0103427-00; and (8) a deed of trust dated June 19, 2014 which was recorded in the Official Records of Contra Costa County on June 24, 2014 as Document Number 2014-0103428-00. (RJN, ECF No. 10.)

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b) advisory committee's notes (emphasis added). A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201"). Here, Plaintiffs do not object to the court taking judicial notice of the existence of these documents, all of which are public records. Therefore, the court takes judicial notice of them.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    first increased payment, Plaintiffs contacted Aurora by telephone and told an Aurora representative
2    that they would not be able to make the increased payments in the future. (Complaint ¶ 11.) The
3    Aurora representative said that Aurora would send Plaintiffs a loan modification application packet.
4    (*Id.*) The Aurora representative also told Plaintiffs that they would have to "miss a few monthly
5    payments in order to be considered for" a loan modification. (*Id.*)

6    Plaintiffs thereafter did in fact receive a loan modification application packet from Aurora. (*Id.* ¶
7    12.) They filled out the application and submitted it, along with financial and other documents, to
8    Aurora the next month, in March 2010. (*Id.*) They also missed "about two" monthly payments, as
9    they were told to do. (*Id.* ¶¶ 11, 13.)

10   Sometime later, in connection with Plaintiffs' loan modification application, "[P]laintiffs were
11   told" that, if they qualified under Aurora's loan modification program[3], their monthly payments
12   would be lowered "based on a lower interest rate." (*Id.* ¶ 14.) They were also told that the new
13   interest rate and monthly payment "would become fixed." (*Id.*) "[F]rom the conversations,"
14   Plaintiffs "understood" that their new monthly payments would be "in the range of $1,500 to $1,800
15   per month." (*Id.*) In addition, Plaintiffs "were informed" that, if they qualified for a loan
16   modification, the modification would be conditioned on their making an initial payment of $4,200
17   and then timely making three monthly payments of $1,508.67. (*Id.* ¶ 15.)

18   Plaintiffs say that they subsequently did make the initial payment of $4,200 and then timely
19   made three monthly payments of $1,508.67. (*Id.* ¶ 16.)

20   Nevertheless, after making these payments, Aurora told Plaintiffs "that in order to be
21   considered," and "as a prerequisite," they "would again have to pay about $4,200 and again make
22   three monthly payments." (*Id.* ¶ 17.) Plaintiffs made these payments, too. (*Id.* ¶ 18.)

23   Plaintiffs allege that they then made "a third set of payments," but they do not allege why they
24   did or how much the payments were. (*Id.*) They also allege that they "complied with all requests
25   for personal and financial documents." (*Id.*)

26   After all this, Plaintiffs "were informed" in September 2011 that "they did not qualify for a

27

28       [3] Even though Plaintiffs mention only one application, the allege that "[a]t least one of the
applications for the modification was through the US Government HAMP program." (FAC ¶ 23.)

No. 3:15-cv-00585 LB
ORDER                                   3

[loan] modification and would not be given a permanent [loan] modification at a reduced monthly rate." (*Id.* ¶ 19.) At that time, Plaintiffs believed that Aurora's decision to deny their application on the ground that they did not qualify for a loan modification was legal, and they did not know, and they did not have any reason to know, that they did qualify for loan modification. (*See id.* ¶¶ 20-21, 24.) It was not until sometime later—"within a period of time within the statute of limitations for each of" their claims—that Plaintiffs learned that they in fact did qualify for a loan modification under both Aurora's own loan modification program and the federal Home Affordable Modification Program ("HAMP"). (*Id.* ¶¶ 22, 24.)

After denying their loan modification, Aurora, through Quality Loan Service Corporation, foreclosed on the Property and took title to it pursuant to a trustee's deed dated October 3, 2011. (*Id.* ¶ 26; RJN, Ex. 3-5, ECF Nos. 10-3, 10-4, 10-5.) Aurora evicted Plaintiffs from the Property on December 22, 2011. (Complaint ¶ 27.)

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint in Contra Costa County Superior Court on December 19, 2014. (*Id.*) They bring the following claims: (1) intentional misrepresentation; (2) breach of contract; (3) promissory estoppel; (4) breach of the implied covenant of good faith and fair dealing; (5) negligence; (6) misrepresentation based on a false promise; and (7) unfair competition, Cal. Bus. & Prof. Code § 17200. (*Id.*)

On February 6, 2015, Aurora removed the action to this court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) Aurora thereafter filed a motion to dismiss the complaint. (Motion, ECF No. 9.) Plaintiffs filed an opposition, and Aurora filed a reply. (Opposition, ECF No. 13; Reply, ECF No. 15.)

**ANALYSIS**

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and

citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. APPLICATION

### I. Plaintiffs' First Claim for Intentional Misrepresentation and Sixth Claim for Misrepresentation based on a False Promise

Plaintiffs' first claim is for intentional misrepresentation, and their sixth claim is for

ORDER                                                      5

misrepresentation based on a false promise. (Complaint ¶¶ 29-37, 63-73.) These are both fraud-based claims, and Plaintiffs' allegations in support of them are virtually identical, so the court addresses them together.

Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (Cal. Ct. App. 1997) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1108 (Cal. 1988)); *see also* Cal. Civ. Code § 1572. "The general rule for liability for non-disclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose." *La Jolla Village Homeowners' Ass'n v. Superior Court*, 212 Cal. App. 3d 1131, 1151 (Cal. Ct. App. 1989), disapproved on other grounds by *Jimenez v. Superior Court*, 29 Cal. 4th 473, 479-80 (Cal. 2002).

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "'[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (italics in original)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

Aurora first argues that both of Plaintiffs' claims are barred by the applicable three-year statute of limitations.[4] (Motion, ECF No. 9 at 11.) California Civil Procedure Code § 338(d) provides that

---

[4] Aurora also suggests that Plaintiffs bring a claim for negligent misrepresentation, but the court does not read Plaintiffs' complaint as doing so. (*See* Motion, ECF No. 9 at 10.)

"[a]n action for relief on the ground of fraud or mistake" must be brought "[w]ithin three years." "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* Aurora points out that it denied Plaintiffs' loan modification application in September 2011, but they did not file this action until December 2014—more than three years later. On the face of the complaint, then, Plaintiffs' claims are time-barred.

To avoid this ostensible limitations problem, Plaintiffs cite to California's "discovery rule." (Opposition, ECF No. 13 at 7-9.) The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal. 2005) (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (Cal. 1971)). In several opinions over the past forty years, the California Supreme Court has articulated a standard for the application of the discovery rule, at least in the tort context. *See generally Fox*, 35 Cal. 4th 797 (Cal. 2005); *Norgart*, 21 Cal. 4th 383; *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926 (Cal. 1994); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (Cal. 1988); *Gutierrez v. Mofid*, 39 Cal. 3d 892 (Cal. 1985); *Sanchez v. South Hoover Hosp.*, 18 Cal. 3d 93 (Cal. 1976). As the California Supreme Court explained:

> A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm. In so using the term "elements," we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.

*Fox*, 35 Cal. 4th at 806 (internal citations omitted). The discovery rule has been applied to contract-based cases involving fraud and misrepresentation. *See Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Watts v. Crocker-Citizens Nat'l Bank*, 132 Cal. App. 3d 516, 523 (Cal. Ct. App. 1982) (misrepresentation); *Balfour, Guthrie & Co. v. Hansen*, 227 Cal. App. 2d 173, 189 (Cal. Ct. App. 1964) (fraud)); *see also Wakefield v. Wells Fargo & Co.*, No. C

1  13-05053 LB, 2014 WL 5077134, at *9-11 (N.D. Cal. Oct. 9, 2014) (discussing in detail the
2  application of the discovery rule to contract-based cases).

3  Still, it is Plaintiffs' burden to show that the discovery rule should postpone the accrual of their
4  two claims. California law clearly establishes that "to rely on the discovery rule for delayed accrual
5  of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred
6  without the benefit of the discovery rule must specifically plead facts to show (1) the time and
7  manner of discovery and (2) the inability to have made earlier discovery despite reasonable
8  diligence.'" *Fox*, 35 Cal.4th at 808 (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App.
9  4th 151, 160 (Cal. Ct. App. 1999)). Plaintiffs have not done that here. They allege in their
10 complaint that, when Aurora denied their application in September 2011, they believed that Aurora's
11 decision to deny their application on the ground that they did not qualify for a loan modification was
12 legal, and they did not know, and they did not have any reason to know, that they did qualify for
13 loan modification. (*See* FAC ¶¶ 20-21, 24.) And they allege that it was not until sometime
14 later—"within a period of time within the statute of limitations for each of" their claims—that they
15 learned that they in fact did qualify for a loan modification under both Aurora's own loan
16 modification program and HAMP. (*Id.* ¶¶ 22, 24.) Plaintiffs do not, however, allege when
17 (specifically) or how they discovered that they qualified for a loan modification under Aurora's loan
18 modification program, nor do they allege that they could not have discovered that they qualified
19 sooner or that they exercised reasonable diligence in trying to do so. Plaintiffs argue in their
20 opposition that "[w]hat guidelines a bank uses to decide if a borrower is qualified is not within the
21 knowledge of [P]laintiffs or the public in general," but then how do Plaintiffs now know that they
22 qualified?[5] Plaintiffs do not say. Even so, nowhere in their complaint do they allege what they did

---

[5] Plaintiffs also suggest that Aurora was in a position of trust so Plaintiffs were justified in believing it. (*See* Opposition, ECF No. 13 at 8.) It is true that the delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust. *See E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1318 (Cal. Ct. App. 2007). But, as a matter of law, Aurora was not in a position of trust. *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089 n.1 (Cal. Ct. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature.") (citing *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476-78 (Cal. Ct. App. 1989).

No. 3:15-cv-00585 LB
ORDER                                  8

to try and find out whether they qualified (reasonable diligence), why they could not learn that they did qualify (inability to discover sooner), or when and how they eventually did learn that they did. Thus, their assertion of the discovery rule fails, and, as alleged, their first and sixth claims fail.[6] Because it is not clear that Plaintiffs could not allege more facts to support the application of the discovery rule, the court dismisses their claims without prejudice.

**II. Plaintiffs' Second Claim for Breach of Contract and Third Claim for Promissory Estoppel**

Plaintiffs' second claim is for breach of contract, and their third claim is for promissory estoppel.[7] (Complaint ¶¶ 38-49.) These claims are related, so the court addresses them together.

Breach of contract and promissory estoppel are two distinct, yet related, theories. To state a claim for breach of contract, a plaintiff must show the following: (1) a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (Cal. Ct. Capp. 2001). "[E]vidence of consideration" is "a necessity for a true breach of contract claim." *Garcia v. World Sav. FSB*, 183 Cal. App. 4th 1031, 1038 (Cal. Ct. App. 2010).

While promissory estoppel also is based on a promise, it is slightly different: it "is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Auth.*, 23 Cal. 4th 305, 310 (Cal. 2000) (citing *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 672 (Cal. 1974)); see *also Hynix Semiconductor, Inc. v. Rambus, Inc.*,

---

[6] Aurora also argues that, even if they are not time-barred, Plaintiffs' claims are not sufficiently alleged. (Motion, ECF No. 9 at 11-13.) Until Plaintiffs can allege claims that are not time-barred, and because Plaintiffs will be given another chance to re-allege these claims, the court declines to address Aurora's merits arguments at this time.

[7] Even though Plaintiffs' breach of contract and promissory estoppel claims are mutually exclusive, *see Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (holding that as a matter of law, promises supported by adequate consideration cannot also form the basis of a promissory estoppel claim), the federal rules allow Plaintiffs to plead inconsistent claims and theories. *See* Fed. R. Civ. P. 8(d)(3).

441 F. Supp. 2d 1066, 1074 (N.D. Cal. 2006) ("The essential difference between a promissory estoppel claim and one for breach of contract is that, in promissory estoppel, equitable principles are substituted for consideration.") (citing *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901-02 (Cal. Ct. App. 2005)). Under the doctrine, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson*, 23 Cal. 4th at 310. The elements of promissory estoppel are: (1) a clear promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; (3) injury (meaning, substantial detriment); and (4) damages "measured by the extent of the obligation assumed and not performed." *See Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (Cal. Ct. App. 2007); *US Ecology*, 129 Cal. App. 4th at 901.

    Aurora argues that Plaintiffs' breach of contract and promissory estoppel claims fail because they do not sufficiently allege a contract or promise. (Motion, ECF No. 9 at 14.) It characterizes Plaintiffs' allegations in this way: "Plaintiffs admit Aurora told [them] their loan would be modified 'if they qualify.' Aurora could not have breached its promise to modify the loan merely if [P]laintiffs made trial payments because, according to [P]laintiffs, the loan only be modified if [P]laintiffs qualified[, . . . and] Plaintiffs repeatedly allege[ that] Aurora notified them they did not qualify." *Id.* (internal citations omitted). But this is not exactly what Plaintiffs allege. Plaintiffs allege that they were informed that, if they qualified for a loan modification, the modification would be conditioned on their making an initial payment of $4,200 and then timely making three monthly payments of $1,508.67. (FAC ¶ 15.) This allegation implies a difference sequence of events than Aurora describes. As Plaintiffs allege it, the sequence is this: first, Plaintiffs submit a loan modification application; second, Aurora determines if Plaintiffs qualify for a loan modification; third; if they do, Plaintiffs make an initial payment of $4,200 and three monthly payments of $1,508.67; and fourth, if Plaintiffs make the payments, Aurora modifies Plaintiffs' loan. Aurora's version switches the second and third events in this sequence.

    This difference matters because, according to Plaintiffs' version, Aurora promised to modify their loan if Plaintiffs made the required payments. Plaintiffs allege that they did but Aurora still did

not modify their loan. Plaintiffs allegations also imply that they qualified for a loan modification because, under their sequence of events, they would not have had to made any of these payments unless Aurora first determined that they qualified for a loan modification. This is sufficient to state a clear contract or promise. Accordingly, Plaintiffs' second and third claims survive.

### III. Plaintiffs' Fourth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' fourth claim is for breach of the implied covenant of good faith and fair dealing. (FAC ¶¶ 50-59.) The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

Aurora argues that Plaintiffs "fail to identify the terms in the deed of trust or the alleged trial plans which were breached. Plaintiffs . . . cite [only] to conditional language[,] that is, the loan would . . . be modified [only] if they qualified." (Motion, ECF No. 9 at 15.) This argument suffers from the same sequence problem that the court described when discussing Plaintiffs' breach of contract and promissory estoppel claims—namely, this is not what Plaintiffs allege. Accordingly, for the same reasons stated in the previous section, Plaintiffs' claim for breach of the covenant of good faith and fair dealing survives.

### IV. Plaintiffs' Fifth Claim for Negligence

Plaintiffs' fifth claim is for negligence. (FAC ¶¶ 60-62.) The elements of a negligence cause of action are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and

(4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Plaintiffs allege that Aurora[8] had "a duty to act reasonably during the processing of [their] loan modification application" and that Aurora breached this duty "by failing to accurately process their loan modification application[ ]." (FAC ¶¶ 60-61.)

Aurora argues that it did not owe a duty to Plaintiffs. Under California law, as Aurora points out, lenders generally do not owe borrowers a duty of care unless their involvement in a transaction goes beyond their "conventional role as a mere lender of money." *See*, *e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (Cal. Ct. App. 1991). Still, the California Court of Appeal, First District recently made clear that "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (Cal. Ct. App. 2014). A duty may arise even where the lender remains within its "conventional role" of merely loaning money. *Id.* Deciding whether a lender owes a duty in a given case requires a court to "balanc[e]" the "non-exhaustive" factors set forth in *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (Cal. 1958). *See*, *e.g.*, *Alvarez*, 228 Cal. App. 4th at 945-46 & n.5. Those factors are:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098 (quoting *Biakanja*, 49 Cal. 2d at 650).

With these factors (as well as the recent enactment of the Homeowner Bill of Rights ("HBOR")) in mind, the California Court of Appeals held in *Alvarez* that once a lender undertakes to consider a loan-modification request, the lender owes the borrower a duty to use reasonable care in handling that request. 228 Cal. App. 4th at 945-52. The *Alvarez* court considered existing California law, and the requirements of and policies behind HBOR, and it held that, once a lender agrees to consider a loan modification, "the *Biakanja* factors clearly weigh in favor of a duty." *Id.* at 948. The court

---

[8] Plaintiffs actually allege that "PNC" had a duty to act reasonably, but the court assumes that this is a cut-and-paste error; PNC is not a party to this action and appears to have nothing to do with Plaintiffs' loan.

No. 3:15-cv-00585 LB
ORDER                                        12

thus reversed the "no duty" dismissal of a negligence claim. *Id.* at 945-52.

*Alvarez* followed this district's pre-HBOR decision in *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10- 0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010). *Alvarez*, 228 Cal. App. 4th at 948-49. That case too "found that the *Biakanja* factors weigh in favor of imposing a duty of care on a lender that undertakes to review a loan for potential modification." *See id.* at 948 (discussing *Garcia* ). A mounting number of federal cases have followed *Alvarez* and *Garcia* to hold that, in light of HBOR, lenders have a duty to exercise reasonable care in handling loan modifications. *Shapiro v. Sage Point Lender Servs.*, No. EDCV 14-1591-JGB (KKx), 2014 WL 5419721, at *8-10 (C.D. Cal. Oct. 24, 2014) (denying motion to dismiss negligence claim); *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195-MWF (AJWx), 2014 WL 4798890, at *12-14 (C.D. Cal. Sept. 26, 2014) (same); *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 2d 1001-02 (N.D. Cal. June 11, 2014) (same). The undersigned too has previously reached the same conclusion. *See Johnson v. PNC Mortg.*, No. 14–cv–02976–LB, 2015 WL 662261, at *4 , -- F. Supp. 3d ---- (N.D. Cal. Feb. 12, 2015); *Rowland v. JPMorgan Chase Bank, N.A.*, No. C 14-00036 LB, 2014 WL 992005, *9 (N.D. Cal. Mar. 12, 2014); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *16-17 (N.D. Cal. Mar. 3, 2014).

Aurora tries to distinguish *Alvarez* and other authorities by pointing out that in those cases the defendants actually mishandled the plaintiffs' loan modification applications, and it says that all it did here was review Plaintiffs' application and deny it before foreclosure. (Reply, ECF No. 15 at 5-6.) But again, Aurora mischaracterizes Plaintiffs' allegations. Plaintiffs allege that Aurora promised to modify their loan if Plaintiffs made the required payments. Plaintiffs allege that they did but Aurora still did not modify their loan. Plaintiffs' allegations also imply that they qualified for a loan modification because, under their sequence of events, they would not have had to made any of these payments unless Aurora first determined that they qualified for a loan modification. The court believes that under the authorities cited above, Plaintiffs have sufficiently alleged that Aurora had a duty to exercise reasonable care in handling Plaintiffs' loan modification application. Plaintiffs' negligence claim survives.

**V. Plaintiffs' Seventh Claim for Unfair Competition**

Plaintiffs' seventh claim is for unfair competition in violation of California's UCL, Cal. Bus. & Prof. Code § 17200. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (Cal. Ct. App. 2003); *see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (Cal. Ct. App. 2004).

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (Cal. Ct. App. 1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (Cal. 2003).

In this case, Plaintiffs allege that Aurora engaged in "unlawful" and "unfair" business practices. Aurora argues that Plaintiffs' claim fails because they lack standing to bring a UCL claim and, even if they have standing, their claim is not sufficiently alleged. (Motion, ECF No. 9 at 16-17.)

As for Aurora's first argument, any individual who has "has suffered injury in fact and has lost money or property as a result of the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or

UNITED STATES DISTRICT COURT
For the Northern District of California

deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.) (italics in original).

Aurora contends that Plaintiffs have not suffered an economic injury because they "merely allege they incurred arrearages on the loan, attorney's fees and costs, and 'damages and injuries in an amount subject to proof at trial.'" (Motion, ECF No. 9 at 17 (citing FAC ¶ 79).) They also say that this allegation is disingenuous because "any arrearages and attorney's fees were . . . incurred [only] due to their inability to make their loan payments and their choice to file this lawsuit." (*Id.*) The court does not agree. As this court recently has explained, courts have held that the sorts of wrongs that Plaintiffs allege constitute "economic injury" sufficient to yield a viable UCL claim. *See Johnson*, 2015 WL 662261, at *7. The court in *Segura v. Wells Fargo Bank*, for example, held that a plaintiff had "plainly" suffered economic injury, and thus had an actionable UCL claim, from a lost opportunity to obtain "lower monthly mortgage payments" through a loan modification. 2014 WL 4798890 at *9. The *Segura* court even held that "miscalculating Plaintiffs' eligibility for loan[-]modification programs" would alone suffice to state a UCL claim. *Id.* at *9. "No more is needed to state a claim," that court wrote. *Id.* (citing *Twombly*, 550 U.S. at 557). In light of this authority, the court finds that Plaintiffs similarly have standing to bring a UCL claim.

Aurora next challenges the merits of Plaintiffs' "unlawful" and "unfair" claims. The court first considers Plaintiffs' "unlawful" UCL claim. "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sep. 21, 2011) (citing *People v. McKale*, 25 Cal. 3d 626, 635 (Cal. 1979)). In their complaint, Plaintiffs allege that Aurora acted unlawfully by violating two HBOR provisions: California Civil Code § 2923.6 and California Civil Code § 2923.55. (FAC ¶ 76.) Paragraph 76 is the only time Plaintiffs even mention violations of these HBOR provisions—Plaintiffs do not bring stand-alone HBOR claims—and Plaintiffs offer no insight about them. Sections 2923.6 and 2923.55 prohibit numerous acts, and without further specification, the court does not know which subsections were violated. It is not enough to simply state that Aurora

"dual tracked," as Plaintiffs do. (FAC ¶ 76.) Accordingly, Plaintiffs' "unlawful" UCL claim is dismissed without prejudice.

The court next considers Plaintiffs' "unfair" UCL claim. As the district court in *Phipps v. Wells Fargo* has explained:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256, 106 Cal. Rptr. 3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal. Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal. Rptr.2d 389 (2002).
>
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr.3d 634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr.3d 697)).
>
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Davis*, 179 Cal. App. 4th 597–598, 101 Cal. Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr.3d 770 (2006)).

*Phipps v. Wells Fargo*, No. CV F 10-2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan.27, 2011). Here, the court is not entirely sure what forms the basis of Plaintiffs' "unfair" claim. Is it the HBOR violations? The court does not know. In light of the uncertainty surrounding Plaintiffs' UCL allegations, and given that Plaintiffs will have leave to file an amended complaint, the court dismisses without prejudice Plaintiffs' "unfair" UCL claim, too.

**CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part Aurora's motion. Plaintiffs' first claim for intentional misrepresentation, sixth claim for misrepresentation based on a false promise, and seventh claim for unfair competition in violation of California's UCL are dismissed without prejudice. Plaintiffs' second claim for breach of contract, third claim for promissory estoppel, fourth claim for breach of the implied covenant of good faith and fair dealing, and fifth claim for negligence survive. Plaintiffs may file a first amended complaint by May 26, 2015.

**IT IS SO ORDERED.**

Dated: May 5, 2015

_____
LAUREL BEELER
United States Magistrate Judge