UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSE CRUZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>　　　　　Defendant. | Case No. 3:15-cv-00585-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AURORA'S MOTION TO DISMISS THE PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 33] |

## INTRODUCTION

In this mortgage- and foreclosure-related action, the defendant Aurora Loan Services LLC ("Aurora") moves to dismiss the first amended complaint brought by the plaintiffs Jose Cruz and Blanca Cruz. (*See* First Amended Complaint ("FAC"), ECF No. 31; Motion, ECF No. 33.[1]) All parties consented to the undersigned's jurisdiction. (Aurora's Consent, ECF No. 7; Plaintiffs' Consent, ECF No. 14.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument. The court grants in part and denies in part Aurora's motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER (No. 3:15-cv-00585-LB)

**STATEMENT**

**I. THE PLAINTIFFS' ALLEGATIONS**

Most of the allegations in the plaintiffs' First Amended Complaint are the same as those in their original Complaint. (*Compare* Complaint ¶¶ 1-70, 72-79, ECF No. 1 *with* FAC ¶¶ 1-51, 67-114, ECF No. 31.) Paragraphs 52 through 66 of the First Amended Complaint are new. (*See* FAC ¶¶ 52-66, ECF No. 31.)

In July 2006, the plaintiffs obtained a loan for $425,600 from SCME Mortgage Bankers, Inc. and purchased property located at 54 Puffin Circle, Oakley, California 94561 (the "Property"). (FAC ¶¶ 2, 8, 10, ECF No. 31; Request for Judicial Notice ("RJN"), Ex. 1, ECF No. 10-1.[2]) That loan was secured by a deed of trust. (RJN, Ex. 1, ECF No. 10-1.)

In February 2010, after defaulting on their loan, the plaintiffs' loan payments increased from $1,532 per month to $3,353 per month. (FAC ¶ 11, ECF No. 31; RJN, Ex. 2, ECF No. 10-2.) After making the first increased payment, the plaintiffs contacted Aurora by telephone and told an Aurora representative that they would not be able to make the increased payments in the future. (FAC ¶ 11, ECF No. 31.) The Aurora representative said that Aurora would send the plaintiffs a loan modification application packet. (*Id.*) The Aurora representative also told the plaintiffs that they would have to "miss a few monthly payments in order to be considered for" a loan modification. (*Id.*)

The plaintiffs thereafter did in fact receive a loan modification application packet from Aurora.

---

[2] The court previously took judicial notice of the following eight documents: (1) a deed of trust dated July 24, 2006 which was recorded in the Official Records of Contra Costa County on July 31, 2006 as Document Number 2006-0240664-00; (2) a notice of default dated October 6, 2009 which was recorded in the Official Records of Contra Costa County on October 6, 2009 as Document Number 2009-0236198-00; (3) a notice of substitution of trustee dated October 6, 2009 which was recorded in the Official Records of Contra Costa County on November 17, 2009 as Document Number 2009-0272551-00; (4) a notice of trustee's sale dated January 7, 2010 which was recorded in the Official Records of Contra Costa County on January 8, 2010 as Document Number 2010-0003724-00; (5) a trustee's deed upon sale dated September 2, 2011 which was recorded in the Official Records of Contra Costa County on September 8, 2011 as Document Number 2011-0184313-00; (6) a grant deed dated April 25, 2012 which was recorded in the Official Records of Contra Costa County on June 1, 2012 as Document Number 2012-0130206-00; (7) a grant deed dated June 20, 2014 which was recorded in the Official Records of Contra Costa County on June 24, 2014 as Document Number 2014-0103427-00; and (8) a deed of trust dated June 19, 2014 which was recorded in the Official Records of Contra Costa County on June 24, 2014 as Document Number 2014-0103428-00. (5/5/2015 Order, ECF No. 27 at 2 n.2.)

1   (*Id.* ¶ 12.) They filled out the application and submitted it, along with financial and other

2   documents, to Aurora the next month, in March 2010. (*Id.*) They also missed "about two" monthly

3   payments, as they were told to do. (*Id.* ¶¶ 11, 13.)

4   Sometime later, in connection with the plaintiffs' loan modification application, the

5   "[p]laintiffs were told" that, if they qualified under Aurora's loan modification program, their

6   monthly payments would be lowered "based on a lower interest rate." (*Id.* ¶ 14.) They were also

7   told that the new interest rate and monthly payment "would become fixed." (*Id.*) "[F]rom the

8   conversations," the plaintiffs "understood" that their new monthly payments would be "in the

9   range of $1,500 to $1,800 per month." (*Id.*) In addition, the plaintiffs "were informed" that, if they

10  qualified for a loan modification, the modification would be conditioned on their making an initial

11  payment of $4,200 and then timely making three monthly payments of $1,508.67. (*Id.* ¶ 15.)

12  The plaintiffs say that they subsequently made the initial payment of $4,200 and then timely

13  made three monthly payments of $1,508.67. (*Id.* ¶ 16.)

14  Nevertheless, after making these payments, Aurora told the plaintiffs "that in order to be

15  considered," and "as a prerequisite," they "would again have to pay about $4,200 and again make

16  three monthly payments." (*Id.* ¶ 17.) The plaintiffs made these payments too. (*Id.* ¶ 18.)

17  The plaintiffs allege that they then made "a third set of payments," but they do not allege why

18  they did or how much the payments were. (*Id.*) They also allege that they "complied with all

19  requests for personal and financial documents." (*Id.*)

20  After all this, the plaintiffs "were informed" in September 2011 that "they did not qualify for a

21  [loan] modification and would not be given a permanent [loan] modification at a reduced monthly

22  rate." (*Id.* ¶ 19.) At that time, the plaintiffs believed that Aurora's decision—to deny their

23  application on the ground that they did not qualify for a loan modification—was legal, and they

24  did not know, and they did not have any reason to know, that they actually qualified for a loan

25  modification because they had no independent knowledge of the financial requirements for a

26  modification. (*Id.* ¶¶ 20-21, 24, 55, 57-60.) It was not until the plaintiffs contacted counsel in

27  response to a news story in December 2014 that they learned that they in fact qualified for a loan

28  modification under both Aurora's own loan modification program and the federal Home

ORDER (No. 3:15-cv-00585-LB)

3

Affordable Modification Program ("HAMP") and that the denial of their loan modification application may have been unlawful. (*Id.* ¶¶ 22, 24, 65-66.) "It is possible," however, that had they "checked with an attorney or other individuals knowledgeable about modifications and had received a second opinion that they may have discovered they should have received a modification." (*Id.* ¶ 54.) But the plaintiffs reasonably did not do this because they "believed Aurora when they were informed they did not qualify" and "had no independent knowledge or even suspicion that they did qualify." (*Id.* ¶¶ 55-57.)

After denying their loan modification, Aurora, through Quality Loan Service Corporation, foreclosed on the Property and took title to it pursuant to a trustee's deed dated October 3, 2011. (*Id.* ¶ 26; RJN, Ex. 3-5, ECF Nos. 10-3, 10-4, 10-5.) Aurora evicted the plaintiffs from the Property on December 22, 2011. (FAC ¶ 27, ECF No. 31.)

## II. PROCEDURAL HISTORY

The plaintiffs filed their original Complaint in Contra Costa County Superior Court on December 19, 2014. (Complaint, ECF No. 1 at 7-21.) They brought the following claims: (1) intentional misrepresentation; (2) breach of contract; (3) promissory estoppel; (4) breach of the implied covenant of good faith and fair dealing; (5) negligence; (6) misrepresentation based on a false promise; and (7) unfair competition, Cal. Bus. & Prof. Code § 17200. (*Id.* ¶¶ 29-79.)

On February 6, 2015, Aurora removed the action to this court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) Aurora thereafter filed a motion to dismiss the Complaint. (Motion, ECF No. 9.) On May 5, 2015, the court granted in part and denied in part Aurora's motion. (5/5/2015 Order, ECF No. 27.) Specifically, the court dismissed without prejudice the plaintiffs' first, sixth, and seventh claims and ruled that the plaintiffs' second, third, fourth, and fifth claims survived. (*Id.* at 17.) The court gave the plaintiffs leave to file a first amended complaint. (*Id.*)

The plaintiffs did so on May 26, 2015. (FAC, ECF No. 31.) They re-alleged all seven claims. (*Id.* ¶¶ 29-114.) On June 9, 2015, Aurora filed a motion to dismiss the plaintiffs first, sixth, and seventh claims only. (Motion, ECF No. 33.)

ORDER (No. 3:15-cv-00585-LB)

4

# ANALYSIS

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks omitted). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro se plaintiff regarding

ORDER (No. 3:15-cv-00585-LB)

5

1  deficiencies in prior order dismissing claim with leave to amend).

2  **II. APPLICATION**

3  **A. The Plaintiffs' First and Sixth Claims Survive**

Aurora again moves to dismiss the plaintiffs' first and sixth claims. (Motion, ECF No. 33 at 6-10.) As in their original complaint, the first claim in the plaintiffs' First Amended Complaint is for intentional misrepresentation, and the sixth claim is for misrepresentation based on a false promise. (FAC ¶¶ 29-73, 99-108, ECF No. 31 at 5-9, 13-16.) These are both fraud-based claims, and the plaintiffs' allegations in support of them are virtually identical, so the court addresses them together.

As the court stated in its 5/5/2015 Order, under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (Cal. Ct. App. 1997) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1108 (Cal. 1988)); *see also* Cal. Civ. Code § 1572. "The general rule for liability for non-disclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose." *La Jolla Village Homeowners' Ass'n v. Superior Court*, 212 Cal. App. 3d 1131, 1151 (Cal. Ct. App. 1989), disapproved on other grounds by *Jimenez v. Superior Court*, 29 Cal. 4th 473, 479-80 (Cal. 2002).

The court also stated in its 5/5/2015 Order that under Federal Rule of Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "'[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v.*

ORDER (No. 3:15-cv-00585-LB)

6

*GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (italics in original)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

In response to the plaintiffs' original Complaint, Aurora argued that the plaintiffs' first and sixth claims were barred by the applicable three-year statute of limitations. (Motion, ECF No. 9 at 11.) The court agreed. In its 5/5/2015 Order, the court stated as follows:

> . . . California Civil Procedure Code § 338(d) provides that "[a]n action for relief on the ground of fraud or mistake" must be brought "[w]ithin three years." "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* Aurora points out that it denied Plaintiffs' loan modification application in September 2011, but they did not file this action until December 2014—more than three years later. On the face of the complaint, then, Plaintiffs' claims are time-barred.
>
> To avoid this ostensible limitations problem, Plaintiffs cite to California's "discovery rule." (Opposition, ECF No. 13 at 7-9.) The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal. 2005) (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (Cal. 1971)). In several opinions over the past forty years, the California Supreme Court has articulated a standard for the application of the discovery rule, at least in the tort context. *See generally Fox*, 35 Cal. 4th 797 (Cal. 2005); *Norgart*, 21 Cal. 4th 383; *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926 (Cal. 1994); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (Cal. 1988); *Gutierrez v. Mofid*, 39 Cal. 3d 892 (Cal. 1985); *Sanchez v. South Hoover Hosp.*, 18 Cal. 3d 93 (Cal. 1976). As the California Supreme Court explained:
>
>> A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm. In so using the term "elements," we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.
>
> *Fox*, 35 Cal. 4th at 806 (internal citations omitted). The discovery rule has been applied to contract-based cases involving fraud and misrepresentation. *See Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Watts v. Crocker-Citizens Nat'l Bank*, 132 Cal. App. 3d 516, 523 (Cal. Ct.

> App. 1982) (misrepresentation); *Balfour, Guthrie & Co. v. Hansen*, 227 Cal. App. 2d 173, 189 (Cal. Ct. App. 1964) (fraud)); s*ee also Wakefield v. Wells Fargo & Co.*, No. C 13-05053 LB, 2014 WL 5077134, at *9-11 (N.D. Cal. Oct. 9, 2014) (discussing in detail the application of the discovery rule to contract-based cases).
>
> Still, it is Plaintiffs' burden to show that the discovery rule should postpone the accrual of their two claims. California law clearly establishes that "to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Fox*, 35 Cal. 4th at 808 (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (Cal. Ct. App. 1999)). Plaintiffs have not done that here. They allege in their complaint that, when Aurora denied their application in September 2011, they believed that Aurora's decision to deny their application on the ground that they did not qualify for a loan modification was legal, and they did not know, and they did not have any reason to know, that they did qualify for loan modification. (*See* [Complaint] ¶¶ 20-21, 24.) And they allege that it was not until sometime later—"within a period of time within the statute of limitations for each of" their claims—that they learned that they in fact did qualify for a loan modification under both Aurora's own loan modification program and HAMP. (*Id.* ¶¶ 22, 24.) Plaintiffs do not, however, allege when (specifically) or how they discovered that they qualified for a loan modification under Aurora's loan modification program, nor do they allege that they could not have discovered that they qualified sooner or that they exercised reasonable diligence in trying to do so. Plaintiffs argue in their opposition that "[w]hat guidelines a bank uses to decide if a borrower is qualified is not within the knowledge of [P]laintiffs or the public in general," but then how do Plaintiffs now know that they qualified? Plaintiffs do not say. Even so, nowhere in their complaint do they allege what they did to try and find out whether they qualified (reasonable diligence), why they could not learn that they did qualify (inability to discover sooner), or when and how they eventually did learn that they did. Thus, their assertion of the discovery rule fails, and, as alleged, their first and sixth claims fail. Because it is not clear that Plaintiffs could not allege more facts to support the application of the discovery rule, the court dismisses their claims without prejudice.

5/5/2015 Order, ECF No. 27 at 6-9.

Aurora once again argues that the plaintiffs' first and sixth claims are barred by the statute of limitations. It argues that the plaintiffs "do not allege (specifically) when or how they discovered they qualified for a loan modification or that they exercised reasonable diligence in trying to do so." (Motion, ECF No. 33 at 7.) The court does not agree. As described above, the plaintiffs now allege that, while they knew in September 2011 that Aurora denied their loan modification application, they did not know, and had no reason to know, that they actually qualified for a loan modification until they visited counsel in December 2014. The reason is that they believed Aurora when Aurora told them that they did not qualify for a loan modification and they had no reason to suspect that they qualified for one. They only learned that their understanding (which was based

ORDER (No. 3:15-cv-00585-LB)

8

on Aurora's representations) was wrong and that they qualified for a loan modification after speaking to counsel in December 2014. Based on the plaintiffs' allegations, and at this stage of the proceedings, the court finds that the discovery rule applies and thus the plaintiffs' first and sixth claims were filed within the applicable three-year statute of limitations.

Aurora nonetheless argues that the plaintiffs' first and sixth claims fail because the plaintiffs do not allege facts to show that it made a misrepresentation or that the plaintiffs justifiably relied on that misrepresentation or suffered damage as a result of it. (Motion, ECF No. 8-10.) The court believes that the plaintiffs' first and sixth claims are sufficiently pleaded. First, as for the misrepresentation, Aurora says that "[t]he representation the application was denied was true," but the plaintiffs do not allege that it is false that Aurora denied their loan modification application. (*Id.* at 8.) Instead, the plaintiffs allege that Aurora's statement that they did not qualify for a loan modification was false and therefore should not have denied their application. Second, as for reliance, Aurora says the plaintiffs "fail to allege how their position changed based on the [mis]representation." (*Id.* at 9.) The plaintiffs, however, allege that they continued to try to obtain a loan modification and refrained from taking other actions, such as borrowing money from family and friends, that would have allowed them to cure their default. Third, as for damages, Aurora says that, while the plaintiffs allege that they lost the Property, the plaintiffs did not lose the Property because Aurora denied their loan modification application. (*Id.*) Instead, Aurora says that the plaintiffs lost the Property "because they were unable to afford the loan payments and were unable to obtain a loan modification." (*Id.*) But the plaintiffs allege that they did not obtain a loan modification because Aurora falsely told them that they did not qualify for one, when they actually did qualify for one. In other words, had Aurora properly determined that they qualified for a loan modification, Aurora would have been obligated to modify their loan, and they would have been able to make their mortgage payments and would not have lost the Property. This connection between the misrepresentation and the harm suffered distinguishes this situation from the cases Aurora cites. (*See id.* at 9-10 (citing *Morgan v. Aurora Loan Servs., LLC*, No. CV 12-4350-CAS (MRWx), 2013 WL 3448552, at *5-6 (C.D. Cal. July 9, 2013); *Zierolf v. Wachovia Mortg.*, No. C-12-3461 EMC, 2012 WL 6161352, at *6 (N.D. Cal. Dec. 11, 2012); *Newgent v. Wells Fargo*

ORDER (No. 3:15-cv-00585-LB)

9

1    *Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, at *5, *7 (S.D. Cal. Mar. 2, 2010)).)

2    Accordingly, the court denies Aurora's motion to dismiss the plaintiffs' first and sixth claims.

### B. The Plaintiffs' Seventh Claim Is Dismissed with Prejudice

The plaintiffs also re-alleged their seventh claim that Aurora engaged in "unlawful" and "unfair" business practices in violation of California's UCL. (FAC ¶¶ 109-114.) Aurora once again argues that their claims are insufficiently pleaded. (Motion, ECF No. 33 at 10-11.)

The court previously dismissed without prejudice the plaintiffs' "unlawful" and "unfair" claims. (5/5/2015 Order, ECF No. 27 at 15-16.) In doing so, the court stated as follows:

> Aurora next challenges the merits of Plaintiffs' "unlawful" and "unfair" claims. The court first considers Plaintiffs' "unlawful" UCL claim. "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sep. 21, 2011) (citing *People v. McKale*, 25 Cal. 3d 626, 635 (Cal. 1979)). In their complaint, Plaintiffs allege that Aurora acted unlawfully by violating two HBOR provisions: California Civil Code § 2923.6 and California Civil Code § 2923.55. ([Complaint] ¶ 76.) Paragraph 76 is the only time Plaintiffs even mention violations of these HBOR provisions—Plaintiffs do not bring stand-alone HBOR claims—and Plaintiffs offer no insight about them. Sections 2923.6 and 2923.55 prohibit numerous acts, and without further specification, the court does not know which subsections were violated. It is not enough to simply state that Aurora "dual tracked," as Plaintiffs do. ([Complaint] ¶ 76.) Accordingly, Plaintiffs' "unlawful" UCL claim is dismissed without prejudice.
>
> The court next considers Plaintiffs' "unfair" UCL claim. As the district court in *Phipps v. Wells Fargo* has explained:
>
> > In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256, 106 Cal. Rptr. 3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr. 3d 46.
> >
> > The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr. 3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr. 3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal. Rptr. 3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal. Rptr. 2d 389 (2002).
> >
> > . . .
ORDER (No. 3:15-cv-00585-LB)

10


United States District Court
Northern District of California

> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr. 3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr. 3d 634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr. 3d 697)).
>
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr. 3d 46 (citing *Davis*, 179 Cal. App. 4th 597–598, 101 Cal. Rptr. 3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770 (2006)).
>
> *Phipps v. Wells Fargo*, No. CV F 10-2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011). Here, the court is not entirely sure what forms the basis of Plaintiffs' "unfair" claim. Is it the HBOR violations? The court does not know. In light of the uncertainty surrounding Plaintiffs' UCL allegations, and given that Plaintiffs will have leave to file an amended complaint, the court dismisses without prejudice Plaintiffs' "unfair" UCL claim, too.

The plaintiffs made no changes or additions to the allegations in support of their UCL claim in the First Amended Complaint. (*Compare* Complaint ¶¶ 74-79, ECF No. 1 at 20-21 *with* FAC ¶¶ 109-114, ECF No. 31 at 16.) In their opposition, they say that the "totality" of the acts alleged in Paragraphs 14 through 28 of their First Amended Complaint plausibly constitute "unfair conduct," but these paragraphs are identical to Paragraphs 14 through 28 of the original Complaint, and the court previously found the plaintiffs' allegations in their original Complaint to be insufficient. In short, the plaintiffs have done nothing in their First Amended Complaint to address the deficiencies the court identified in its 5/5/2015 Order. For this reason, the court dismisses the plaintiffs' seventh claim with prejudice.

**CONCLUSION**

The court grants in part and denies in part Aurora's motion. The plaintiffs' first and sixth claims survive. The plaintiffs' seventh claim is dismissed with prejudice. Aurora shall answer the plaintiffs' First Amended Complaint within 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 17, 2015

_____
LAUREL BEELER
United States Magistrate Judge